**ORIGINAL** IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, § § § | **13-MC-0094** |
| Plaintiff, § § | |
| v. § § | MISC. ACTION NO. |
| RFF GP, LLC, KGW CAPITAL MANAGEMENT and KEVIN G. WHITE, § § § | **FILED** |
| Defendants, § § | UNITED STATES DISTRICT COURT DENVER, COLORADO |
| REVELATION FOREX FUND, LP, MERIDIAN PROPANE LP, and W CORPORATE REAL ESTATE, LP d/b/a KGW REAL ESTATE, § § § § | JUL 1 6 2013 |
| Relief Defendants. § § | JEFFREY P. COLWELL CLERK |

## NOTICE OF APPOINTMENT OF RECEIVER

Pursuant to the provisions of 28 U.S.C. § 754, Kelly M. Crawford provides notice of his appointment as Temporary Receiver for RFF GP, LLC, KGW Capital Management, Kevin G. White, Revelation Forex Fund, LP, Meridian Propane LP, and W Corporate Real Estate, LP d/b/a KGW Real Estate. True and correct copies of the *Complaint* filed by the U.S. Commodity Futures Trading Commission, the *Order Granting Plaintiff's Ex Parte Emergency Motion for Statutory Restraining Order*; and the *Order Lifting Temporary Seal* of all filings are attached hereto as **Exhibit A**, **Exhibit B**, and **Exhibit C** respectively.

_____
Kelly M. Crawford, Receiver

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) **FILED UNDER SEAL** |
| v. | ) ) |
| RFF GP, LLC, KGW CAPITAL MANAGEMENT, LLC, and KEVIN G. WHITE, | ) **CIVIL ACTION NO. 4:13cv382** ) ) ) ) |
| Defendants, | ) ) |
| REVELATION FOREX FUND, LP, MERIDIAN PROPANE LP, and W CORPORATE REAL ESTATE, LP d/b/a KGW REAL ESTATE, | ) ) ) ) ) |
| Relief Defendants. | ) ) |

<u>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT**</u>

Plaintiff, U.S. Commodity Futures Trading Commission (the "Commission" or "CFTC"), alleges as follows:

## I.   SUMMARY

1.      From at least September 2011, through the present (the "Relevant Period"), Kevin G. White ("White"), individually, and while acting as an agent and controlling person of RFF GP, LLC ("RFF GP") and KGW Capital Management, LLC ("KGW Capital") (collectively "Defendants"), fraudulently solicited at least $5.8 million from at least 20 actual and prospective participants in a pooled investment vehicle ("pool participants") established by Defendants for the purpose of trading in off-exchange agreements, contracts or transactions in foreign currency ("forex") on a leveraged or margined basis.



2.      Of the at least $5.8 million the Defendants accepted for forex trading during the Relevant Period, Defendants misappropriated approximately $1.7 million for personal and other expenses.

3.      Defendants solicited prospective pool participants through two websites, *www.revelationforex.com* and *www.kgwcapital.com* (collectively "websites"), written promotional materials, and at least one trade show presentation to invest in Revelation Forex Fund, LP ("RFF"), a self-described hedge fund and commodity pool, where pool participants' funds would be pooled for the purpose of trading forex.

4.      In soliciting actual and prospective pool participants, Defendants intentionally or recklessly misrepresented or omitted material facts by:  (1) failing to disclose that Defendants were misappropriating pool participants' funds; (2) claiming that RFF achieved consistently profitable rates of return and a compound annual growth rate as high as 37.08% since Defendants purportedly began trading on its behalf in January 2009, when in reality, RFF consistently lost money since Defendants began trading in September 2011; (3) misrepresenting RFF's performance in comparison with other forex funds; and (4) misrepresenting White's brokerage experience and failing to disclose that White was fired from his employment as a broker in the securities industry and was censured and barred by the New York Stock Exchange ("NYSE") based on multiple customer complaints filed against him.

5.      As a result of Defendants' fraudulent conduct, RFF received pool participants' funds to which it has no legitimate interest or entitlement.  Similarly, Defendants transferred some of the funds that they misappropriated to Relief Defendants, Meridian Propane LP ("Meridian Propane"), and W Corporate Real Estate, LP d/b/a KGW Real Estate ("KGW Real Estate"), both of which are controlled by White and share a business address with Defendants.

Meridian Propane and KGW Real Estate have no legitimate business interest or entitlement to the misappropriated funds, which were derived from Defendants' unlawful acts.

6.      By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of provisions of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2006 & Supp. V 2011), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Pub. L. No. 111-203, §§ 701-774, 124 Stat. 1376, 1641 *et seq.* (effective July 16, 2011).  Specifically, Defendants violated Section 4b(a)(2)(A), (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006 & Supp. V 2011) and Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2006).

7.      White committed the acts and omissions alleged herein in the scope of his employment, agency or office with RFF GP and KGW Capital.  Therefore, RFF GP and KGW Capital are liable under Section 2(a)(1)(B) of the Act, as amended, 7 U.S.C. § 2(a)(1)(B) (2006 & Supp. V 2011), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2012), for the acts and omissions of White in violation of the Act.

8.      White controlled RFF GP and KGW Capital throughout the Relevant Period and knowingly induced RFF GP's and KGW Capital's violations of the Act.  Therefore, White is liable for RFF GP's and KGW Capital's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13a-1 (2006).

9.      Accordingly, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2006 & Supp. V 2011), the Commission brings this action to enjoin Defendants' unlawful acts

and practices and to compel compliance with the Act, as amended.

10.     In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

11.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as described more fully below.

## II.     JURISDICTION AND VENUE

12.     This Court possesses jurisdiction over this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2006 & Supp. V 2011), which authorizes the Commission to seek injunctive and other relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

13.     The Commission has jurisdiction over the forex solicitations and transactions at issue in this case pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2006 & Supp. V 2011), and Section 2(c)(2)(C) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C) (2006 & Supp. V 2011).

14.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because Defendants transact business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur within this District.

III.  **THE PARTIES**

**Plaintiff**

15.      Plaintiff **U.S. Commodity Futures Trading Commission** is an independent

federal regulatory agency that is charged by Congress with the administration and enforcement

of the Act, as amended, and the Commission Regulations promulgated thereunder.  The

Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W.,

Washington, D.C. 20581.

**Defendants**

16.      Defendant **RFF GP, LLC** is a Texas company that was formed on or about July

20, 2011, with offices at 2400 Dallas Parkway, Suite, 540, Plano, Texas 75093.  RFF GP is

RFF's general partner.  RFF GP is not registered with the Commission.

17.      Defendant **KGW Capital Management, LLC** is a Texas company that was

formed on or about July 25, 2007, with offices at 2400 Dallas Parkway, Suite 540, Plano, Texas

75093.  KGW Capital purports to be "one of the world's leading private investment firms" that

offers investments in forex through RFF among other investments.  KGW Capital has never been

registered with the Commission.

18.      Defendant **Kevin G. White** resides in the Plano, Texas area and has a business

office at 2400 Dallas Parkway, Suite 540, Plano, Texas 75093.  White is the manager and

director of RFF GP and the president and CEO of KGW Capital.  White was previously

registered with the Commission as an associated person at Lehman Brothers Inc. (later Shearson

Lehman Brothers) from 1981 to 1987, and as an associated person at EF Hutton and Company

Inc. (later Shearson Lehman Hutton) from 1987 to 1988.

**Relief Defendants**

19.     Relief Defendant **Revelation Forex Fund, LP** is a Texas company that was

formed on or about June 10, 2011, with offices at 2400 Dallas Parkway, Suite 540, Plano, Texas

75093.  RFF is a commodity pool operated by Defendants.

20.     Relief Defendant **Meridian Propane LP** is a Texas company that was formed on

or about August 16, 2012, with offices at 2400 Dallas Parkway, Suite 540, Plano, Texas 75093.

White is the president and CEO of Meridian Propane.

21.     Relief Defendant **W Corporate Real Estate, LP d/b/a KGW Real Estate** is a

Texas company that was formed in April 2005, with offices at 2400 Dallas Parkway, Suite 540,

Plano, Texas 75093.  White is the founder and CEO of KGW Real Estate.

## IV.     STATUTORY BACKGROUND

22.     Section 2(c)(2)(C)(i), (iii) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(i), (iii)

(2006 & Supp. V 2011), in pertinent part, provides that the Commission has jurisdiction over

forex transactions if the transactions are offered to or entered into with a person that is not an

Eligible Contract Participant ("ECP") on a leveraged or margined basis; the transactions do not

result in actual delivery within two days or otherwise create an enforceable obligation to

make/take delivery in connection with the parties' line of business; and neither the counterparty

to the transactions nor the Defendants are one of certain enumerated persons.

23.     To qualify as an ECP a pool participant must be an individual who has amounts

invested on a discretionary basis, the aggregate of which is in excess of (i) $10 million, or (ii) $5

million and who enters into the transaction "to manage the risk associated with an asset owned or

liability incurred, or reasonably likely to be owned or incurred, by the individual."  Section

1a(18)(A)(xi) of the Act, as amended, 7 U.S.C. § 1a(18)(A)(xi) (2006 & Supp. V 2011).

24.    A commodity "pool" is defined in Commission Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1) (2012), as any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading commodity interests.

25.    A "commodity pool operator" ("CPO") is defined in Commission Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2012), as any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an ECP as defined in Section 1(a)(18) of the Act, as amended, 7 U.S.C. § 1a(18) (2006 & Supp. V 2011) and that engages in retail forex transactions.

26.    An "associated person" ("AP") of a CPO is defined in Commission Regulation 5.1(d)(2), 17 C.F.R. § 5.1(d)(2) (2012), as any natural person who is associated with a CPO as a partner, officer, employee, consultant or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves the solicitation of funds, securities, or property for a participation in a commodity pool, or the supervision of any person or persons so engaged.

27.    A pool "participant" is defined in Commission Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2012), as any person that has any direct financial interest in a commodity pool.

## V.    FACTS

28.    Since at least September 2011, Defendants solicited approximately $5.8 million from at least 20 pool participants to invest in a purported hedge fund, RFF, where the pool participants' funds would be placed in a commodity pool for the purposes of trading forex on a leveraged or margined basis.  Under Defendants' purported business structure, the RFF pool is one of the "investment strategies" offered by the parent management company, KGW Capital, while RFF GP was involved in day-to-day operations of the pool.

29.     Pool participants deposited funds into RFF's bank accounts, which were controlled by White.  White then transferred funds received from pool participants into one of eleven forex trading accounts he opened at FXCM, LLC ("FXCM") under the name of RFF. FXCM is a New York company that is registered with the Commission as a forex dealer, a forex firm, a retail foreign exchange dealer, and a futures commission merchant.

30.     Defendants subsequently used the pooled pool participants' funds they deposited with FXCM to speculatively trade forex on a leveraged basis with neither Defendants nor the pool participants making actual purchases of foreign currency nor receiving actual delivery of foreign currency.  Upon information and belief, at least some of the pool participants were non–ECPs.  Neither Defendants nor the counterparty to the forex transactions that were entered into by Defendants and the pool participants were United States financial institutions, registered brokers or dealers (or their associated persons), or financial holding companies.

**A.     Defendants Misappropriated Pool Participants' Funds**

31.     During the Relevant Period, pool participants provided Defendants with funds either through bank wire transfers to RFF's bank accounts, which were controlled by White, or through checks made payable to RFF for purposes of trading forex.  White in turn transferred some of these pool participant funds to his personal bank accounts, while using other pool participants' funds for personal and business expenses.  Additionally, White transferred funds to Relief Defendants Meridian Propane and KGW Real Estate, which were entities controlled by him and that had nothing to do with forex trading.

32.     Of the approximately $5.8 million invested with RFF during the Relevant Period, Defendants misappropriated approximately $1.7 million.  White used the misappropriated funds for personal expenses, including a gym membership, retail purchases, meals, travel, a dog

training service, vehicle maintenance, and alimony payments as well as business expenses including furniture, electronic equipment, and marketing services. In essence, White treated RFF's bank accounts as his personal bank account.

33.     Defendants concealed their misappropriation of pool participants' funds from prospective pool participants by claiming in their promotional materials that they charged an "industry standard" 2% annual management fee and a 20% annual performance fee, which was purportedly based on profits. Furthermore, White told prospective pool participants that Defendants would not be paid unless RFF was profitable. Contrary to Defendants' representations, White's personal expenditures of pool participants' funds and those pool participants' funds transferred to other businesses controlled by him far exceeded the purported 2% annual management fee. Moreover, White's misappropriation of pool participants' funds continued in spite of RFF's unprofitability.

**B.      Defendants' Material Misrepresentations and Omissions**

34.     During the Relevant Period, Defendants made a litany of material misrepresentations and omissions that misstated RFF's profitability as well as White's previous brokerage experience and that failed to disclose Defendants' misappropriation of funds. Defendants made these misrepresentations and omissions through written promotional materials used to solicit prospective pool participants by depicting purported profitable trading results that are posted on Defendants' currently active websites. Additionally, White used these same misleading materials to solicit prospective pool participants at the May 2013, "MoneyShow" trade show event in Las Vegas.

35.     In promotional material entitled "Historical Performance" posted on their websites and distributed by White at the "MoneyShow," Defendants claimed annualized returns

for RFF ranging from 24.01% to 59.73% for each year between 2009 and 2012. These claims
are false because Defendants' actual performance in trading forex on behalf of RFF resulted in
successive losses of $34,000 in 2011 and $933,000 in 2012, for a cumulative loss of
approximately $967,000. Moreover, Defendants' forex trading did not begin until September
2011, not January 2009, as they claim.

36.     For 2013, Defendants' promotional materials claimed an annualized growth rate
of 32.07% through April 30, 2013, when in actuality RFF lost an additional $433,000 during this
same period with cumulative losses of $1.4 million. Although Defendants' trading positions
have subsequently recouped most of these losses, RFF remains at a net loss of approximately
$82,000 through June 17, 2013.

37.     Defendants further solicited prospective pool participants by claiming that RFF
had an "astounding" 37.08% (later revised to 36.56%) compound annual growth rate since
January 2009, and that an investment of $250,000 in 2009 would have yielded $964,591 as of
April 30, 2013, for a total return of 385.84%. These claims are false. In reality, a pool
participant who invested in RFF since Defendants began trading in September 2011, and
remained invested to April 30, 2013, or the present, would have suffered an investment loss—in
stark contrast to RFF's purported 385.84% gain. White knew that Defendants' representations
regarding RFF's purported profitability since 2009 were false because he controlled RFF's
trading and bank accounts and because he formed RFF in 2011.

38.     Although Defendants' trading was consistently unprofitable, Defendants'
promotional materials claimed that "Revelation Forex Fund has achieved positive gains in 42 of
the last 52 months (*80.77% months with gains*) through April 30, 2013." White told prospective
pool participants at the "MoneyShow" that RFF had never had two successive losing months.

These claims are false.  Through April 30, 2013, RFF has been profitable in only 7 of the 20

months that Defendants have been trading, meaning that in only approximately 35% of the

months was RFF profitable—not 80.77% as Defendants claimed.  Contrary to Defendants'

claims, RFF has only once been profitable for two successive months.  White knew that the

claims he made at the "MoneyShow" regarding the purported consistency of RFF's profits were

false because he controlled RFF's trading and bank accounts.

39.     To lure prospective pool participants to invest, while concealing their trading

losses, Defendants claimed that RFF was recently recognized as the "#2 best performing [forex]

fund" in the world by EliteForexFunds, which purports to be "The Definitive Source on The

World's Best Forex Funds."  To support these claims, Defendants solicited prospective pool

participants with a chart depicting their fraudulent claims of annual profits for RFF since 2009

and which maintained that the "#2" ranking is based upon "a minimum of 4 years [of] audited

results."  These claims are totally false.  Defendants' chart showed purported profits for four full

years, from 2009 to 2012, when in fact they only began trading in September 2011, and lost

money in both 2011 and 2012.  Furthermore, upon information and belief, EliteForexFunds is a

sham ranking system manipulated by Defendants to mislead prospective pool participants

through fraudulent claims of "audited" results.

40.     In their solicitation of pool participants, Defendants touted White's purported

25-year Wall Street career as including a "long distinguished tenure at Shearson Loeb Rhodes

and predecessor firms . . . Shearson Lehman Brothers, Shearson Lehman Hutton . . . ."

Defendants' claims are false and contain material omissions.  White's Wall Street career lasted

only approximately seven years and he was fired by both Shearson Lehman Brothers and its

successor firm, Shearson Lehman Hutton.  White was subsequently censured and barred by the NYSE, for unauthorized trades in customer accounts and making material misstatements.

41.      In connection with Defendants' misleading claims that White was a successful Wall Street broker, Defendants failed to disclose that White filed for Chapter 7 bankruptcy in 1995 and that several federal tax liens have been filed against him.

42.      During the Relevant Period, Defendants failed to disclose to actual and prospective pool participants that:  (1) they misappropriated pool participants' funds; (2) their forex trading was unprofitable; and (3) White was not an experienced and successful Wall Street broker.

43.      The Defendants were required to disclose such material information because when making representations that RFF was highly profitable, that RFF's profitability compared favorably with other forex funds, and that through White, RFF was managed by a highly experienced and successful broker, the Defendants were required to disclose the truth about their misappropriation of funds, unprofitability, and White's checkered brokerage experience.

**C.      White Controlled RFF GP and KGW Capital**

44.      During the Relevant Period, White served as an officer of RFF GP and KGW Capital.  White exercised day-to-day control over the business activities of RFF GP and KGW Capital by opening trading and bank accounts on RFF GP's and KGW Capital's behalf and serving as the sole signatory on said accounts.  Additionally, White was responsible for the creation of the websites and solicited prospective pool participants on behalf of RFF GP and KGW Capital.  Accordingly, White knew of, and personally controlled RFF GP's and KGW Capital's activities giving rise to the above-described acts.

## VI.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE

**Violations of Section 4b(a)(2)(A), (C) of the Act, as Amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006 & Supp. V 2011):  Fraud by Misappropriation, Misrepresentations, and Omissions**

45.      Paragraphs 1 through 44 are re-alleged and incorporated herein by reference.

46.      Section 4b(a)(2)(A), (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006 & Supp. V 2011), makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market -- (A) to cheat or defraud or attempt to cheat or defraud the other person . . . (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

47.      Pursuant to Section 2(c)(2)(C)(ii)(I) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(ii)(I) (2006 & Supp. V 2011), Section 4b(a)(2)(A), (C) of the Act, as amended, 7 U.S.C. § 4b(a)(2)(A), (C) (2006 & Supp. V 2011), applies to Defendants' forex transactions, agreements or contracts and pooled investment vehicle.  Additionally, pursuant to Section 2(c)(2)(C)(iv) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iv) (2006 & Supp. V 2011), Section 4b(a)(2)(A), (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006 & Supp. V 2011), applies to Defendants' forex transactions "as if" they were  contracts of sale of a commodity for future delivery.

48.      During the Relevant Period, Defendants violated Section 4b(a)(2)(A), (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006 & Supp. V 2011), in that Defendants cheated

or defrauded, or attempted to cheat or defraud, and willfully deceived, or attempted to deceive,

actual and prospective pool participants by, among other things:  (1) misappropriating pool

participants' funds; (2) misrepresenting the profitability of their trading; and (3) omitting

material information, including that: (i) they were misappropriating funds; (ii) their trading was

not profitable; and (iii) White was not a successful broker.

49.     White engaged in the acts and practices described above willfully,

knowingly or with reckless disregard for the truth.

50.     The foregoing acts, omissions, and failures of White occurred within the scope of

White's employment, office, or agency with RFF GP and KGW Capital.  Therefore, RFF GP and

KGW Capital are liable for these acts, omissions, and failures pursuant to Section 2(a)(1)(B) of the

Act, as amended, 7 U.S.C. § 2(a)(1)(B) (2006 & Supp. V 2011), and Commission Regulation 1.2,

17 C.F.R. § 1.2 (2012).

51.     White controlled RFF GP and KGW Capital, directly or indirectly, and knowingly

induced, directly or indirectly, RFF GP's and KGW Capital's violations of Section 4b(a)(2)(A),

(C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006 & Supp. V 2011).  White is

therefore liable for RFF GP's and KGW Capital's violations as a controlling person pursuant to

Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).

52.     Each misappropriation, misrepresentation or omission of material fact, and,

including but not limited to those specifically alleged herein, is alleged as a separate and distinct

violation of Section 4b(a)(2)(A), (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006

& Supp. V 2011).

**COUNT TWO**

**Violations of Section 4o(1)(A) and (B) of the Act,
7 U.S.C. § 6o(1)(A) and (B) (2006):
Fraud by a Commodity Pool Operator**

53.      The allegations set forth in paragraphs 1 through 52 are re-alleged and

incorporated herein by reference.

54.      Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006), in relevant part, makes it

unlawful for a CPO or an AP of a CPO, by use of the mails or any means or instrumentality of

interstate commerce, directly or indirectly:  (A) to employ any device, scheme, or artifice to

defraud any participant or prospective participant; or (B) to engage in any transaction, practice,

or course of business which operates as a fraud or deceit upon any participant or prospective

participant.

55.      Pursuant to Section 2(c)(2)(C)(ii)(I) of the Act, as amended, 7 U.S.C.

§ 2(c)(2)(C)(ii)(I) (2006 & Supp. V 2011), Section 4o(1)(A) and (B) of the Act, 7 U.S.C.

6o(1)(A) and (B) (2006), applies to Defendants' forex transactions, agreements or contracts and

accounts and pooled investment vehicle.

56.      During the Relevant Period, RFF GP and KGW Capital acted as CPOs by

operating or soliciting, accepting, and receiving funds into a pooled investment vehicle for the

purpose of trading in retail forex as described in Section 2(c)(2)(C)(i) of the Act, as amended,

7 U.S.C. § 2(c)(2)(C)(i) (2006 & Supp. V 2011).

57.      During the Relevant Period, White acted as an AP of a CPO by soliciting,

accepting and receiving funds for RFF GP and KGW Capital.

58.      During the Relevant Period, Defendants violated Section 4o(1)(A) and (B) of the

Act, 7 U.S.C. § 6o(1)(A) and (B) (2006), in that while acting as CPOs and as an AP of a CPO,

they directly or indirectly employed a device, scheme, or artifice to defraud pool participants or

prospective pool participants, and engaged in transactions, practices, or a course of business

which operated as a fraud or deceit upon pool participants or prospective pool participants by

using the mails or other means or instrumentalities of interstate commerce. The fraudulent acts

include, but are not limited to, the following: (1) misappropriating pool participants' funds;

(2) misrepresenting RFF's profitability and White's experience as a broker; and (3) failing to

disclose material information.

59.     White engaged in the acts and practices described above willfully, knowingly or

with reckless disregard for the truth.

60.     The foregoing acts, omissions, and failures of White occurred within the scope of

White's employment, office, or agency with RFF GP and with KGW Capital. Therefore, RFF GP

and KGW Capital are liable for these acts, omissions, and failures pursuant to Section 2(a)(1)(B) of the

Act, as amended, 7 U.S.C. § 2(a)(1)(B) (2006 & Supp. V 2011), and Commission Regulation 1.2,

17 C.F.R. § 1.2 (2012).

61.     White controlled RFF GP and KGW Capital directly or indirectly, and knowingly

induced, directly or indirectly, RFF GP's and KGW Capital's violations of Section 4$o$(a)(1)(A)

and (B) of the Act, 7 U.S.C. § 6$o$(a)(1)(A) and (B) (2006). White is therefore liable for RFF

GP's and KGW Capital's violations as a controlling person pursuant to Section 13(b) of the Act,

7 U.S.C. § 13c(b) (2006).

62.     Each misappropriation, misrepresentation or omission of material fact by

Defendants during the Relevant Period, including but not limited to those specifically alleged

herein, is alleged as a separate and distinct violation of Section 4$o$(1)(A) and (B) of the Act,

7 U.S.C. § 6$o$(1)(A) and (B) (2006).

## COUNT THREE

### Disgorgement of Funds From Relief Defendants

63.    The allegations set forth in paragraphs 1 through 62 are re-alleged and incorporated herein by reference.

64.    Defendants defrauded pool participants and misappropriated pool participants' funds.

65.    Relief Defendants, RFF, Meridian Propane and KGW Real Estate received funds as a result of Defendants' fraudulent conduct and misappropriation of pool participants' funds, and they have been unjustly enriched thereby.

66.    Relief Defendants, RFF, Meridian Propane and KGW Real Estate have no legitimate entitlement to or interest in the funds received as a result of Defendants' fraudulent conduct and misappropriation.

67.    Relief Defendants, RFF, Meridian Propane and KGW Real Estate should be required to disgorge funds up to the amount they received from Defendants' fraudulent conduct and misappropriation, or the value of those funds that they may have subsequently transferred to third parties.

## VII.    RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2006 & Supp. V 2011), and pursuant to its own equitable powers, enter:

A.    An order finding that Defendants violated Section 4b(a)(2)(A), (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006 & Supp. V 2011);

B.    An order finding that Defendants violated Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) (2006);

C.      An order of permanent injunction prohibiting Defendants and any other person or entity associated with them from engaging in conduct in violation of Section 4b(a)(2)(A), (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C) (2006 & Supp. V 2011);

D.      An order of permanent injunction prohibiting Defendants and any other person or entity associated with them from engaging in conduct in violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) (2006);

E.      An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from directly or indirectly:

1.      Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a (2006 & Supp. V 2011);

2.      Entering into any transactions involving commodity futures, swaps (as that term is defined in Section 1a(47) of the Act, as amended, 7 U.S.C. § 1(a)(47) (2006 & Supp. V 2011) and as further defined by Commission Regulation 1.3(xxx), 17 C.F.R. 1.3(xxx) (2012)) ("swaps"), options on commodity futures, commodity options (as that term is defined in Commission Regulations 1.3(hh) and 32.1(b)(1), 17 C.F.R. §§ 1.3(hh) and 32.1(b)(1) (2012)) ("commodity options"), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) (2006 & Supp. V 2011) ("forex contracts"), for their own personal or proprietary account or for any account in which they have a direct or indirect interest;

3.    Having any commodity futures, swaps, options on commodity futures, commodity options, security futures products, and/or forex contracts traded on their behalf;

4.    Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, swaps, options on commodity futures, commodity options, security futures products, and/or forex contracts;

5.    Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, swaps, options on commodity futures, commodity options, security futures products, and/or forex contracts;

6.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

7.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012);

F.    An order requiring Defendants, the Relief Defendants, and any third party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may

order, all benefits received from the acts and practices which constitute violations of the Act, as

described herein, plus pre-judgment interest thereon from the date of such violations, plus post-

judgment interest;

      G.     An order requiring Defendants, as well as any of their successors, to make full

restitution, pursuant to such procedure as the Court may order, to every pool participant or other

person or entity whose funds were received or utilized by them in violation of the provisions of

the Act, as described herein, plus pre-judgment interest thereon from the date of such violations,

plus post-judgment interest;

      H.     An order directing Defendants, Relief Defendants, and any successors thereof, to

rescind, pursuant to such procedures as the Court may order, all contracts and agreements,

whether implied or express, entered into between them and any of the pool participants whose

funds were received by Defendants as a result of the acts and practices which constitute

violations of the Act, as described herein;

      I.     An order directing Defendants, as well as any of their successors, to pay civil

monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the

higher of:  (1) triple the monetary gain to Defendants for each violation of the Act; or

(2) $140,000 for each violation of the Act committed on or after October 23, 2008, plus

post-judgment interest;

      J.     An order directing Defendants, as well as any of their successors, to pay costs and

fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

      K.     An order providing such other and further relief as this Court may deem necessary

and appropriate under the circumstances.

Dated:  July 9, 2013                           Respectfully Submitted,


                                               By:  /s/  *Harry E. Wedewer*
                                               Harry E. Wedewer, (*hwedewer@cftc.gov*)
                                               *Pro hac vice*
                                               John Einstman
                                               *Pro hac vice*
                                               U.S. COMMODITY FUTURES TRADING
                                               COMMISSION
                                               Three Lafayette Centre
                                               1155 21st Street, N.W.
                                               Washington, D.C. 20581
                                               P:  (202) 418-5000 (Main)
                                               P:  (202) 418-5189 (Wedewer direct dial)
                                               F:  (202) 418-5538
                                               ATTORNEYS FOR PLAINTIFF
                                               U.S. COMMODITY
                                               FUTURES TRADING COMMISSION

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| U.S. Commodity Futures Trading Commission | RFF GP, LLC, KGW Capital Management, LLC and Kevin G. White; Relief Defendants: Revelation Forex Fund, LP; Meridian Propane LP and W Corporate Real Estate, LP d/b/a KGW Real Estate |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Collin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Harry E. Wedewer, Division of Enforcement, U.S. Commodity Futures Trading Commission, 1155 21st Street, N.W., Washington, D.C. 20581

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
7 U.S.C. 1 et seq.

Brief description of cause:
Fraud in violation of the Commodity Exchange Act (7 U.S.C. 1 et seq.)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

DATE
07/09/2013

SIGNATURE OF ATTORNEY OF RECORD
/s/ Harry E. Wedewer

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | FILED UNDER SEAL |
| v. | ) ) | CIVIL ACTION NO. 4:13-cv-382 |
| RFF GP, LLC, KGW CAPITAL MANAGEMENT, LLC, and KEVIN G. WHITE, | ) ) ) ) | |
| Defendants, | ) ) | |
| REVELATION FOREX FUND, LP, MERIDIAN PROPANE LP, and W CORPORATE REAL ESTATE, LP d/b/a KGW REAL ESTATE, | ) ) ) ) ) | |
| Relief Defendants. | ) | |

ORDER GRANTING PLAINTIFF'S *EX PARTE* EMERGENCY
MOTION FOR A STATUTORY RESTRAINING ORDER, APPOINTMENT OF A
TEMPORARY RECEIVER, EXPEDITED DISCOVERY, AN ORDER TO SHOW
CAUSE REGARDING A PRELIMINARY INJUNCTION, AND OTHER
EQUITABLE RELIEF

Before the Court is Plaintiff, U.S. Commodity Futures Trading Commission's (the

"Commission" or "Plaintiff") *Ex Parte* Emergency Motion for a Statutory Restraining Order,

Appointment of a Temporary Receiver, Expedited Discovery, An Order to Show Cause

regarding a Preliminary Injunction, and Other Equitable Relief (the "SRO Motion") [de #3]. The Court,

having considered the SRO Motion and all other evidence presented by Plaintiff, finds that:



1.     This Court has jurisdiction over the parties and over the subject matter of this action pursuant to Section 6c of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. § 13a-1 (2006 & Supp. V 2011).

2.     Venue lies properly within this District pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006).

3.     There is good cause to believe that Defendants, RFF GP, LLC, KGW Capital Management, LLC, and Kevin G. White (collectively "Defendants"), have engaged, are engaging, or are about to engage in acts and practices constituting violations of the Act, as amended, 7 U.S.C. §§ 1 *et seq.* (2006 & Supp. V 2011).

4.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for Defendants' pool participants in the form of monetary redress will occur from the sale, transfer, assignment, or other disposition by Defendants of assets or records unless Defendants and Relief Defendants, Revelation Forex Fund, LP, Meridian Propane LP, and W Corporate Real Estate, LP, d/b/a KGW Real Estate ("KGW Real Estate") (collectively "Relief Defendants"), are immediately restrained and enjoined by Order of the Court.

5.     Good cause exists for the freezing of assets owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants and Relief Defendants.

6.     Good cause exists for entry of an order prohibiting Defendants and Relief Defendants, their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successor thereof, from destroying records and/or denying agents of the Commission access to inspect and copy records to ensure that Commission representatives have immediate and complete access to those books and records.

7.      Good cause exists for the appointment of a Temporary Receiver to take control of all assets owned, controlled, managed or held by, or on behalf of, or for the benefit of Defendants and Relief Defendants in order to preserve assets, investigate and determine pool participants' claims, determine unlawful proceeds retained by Defendants and Relief Defendants and amounts due to pool participants as a result of Defendants' alleged violations, and distribute remaining funds under the Court's supervision.

8.      Good cause exists for Plaintiff to conduct expedited discovery in order to determine the full extent of Defendants' alleged wrongdoing, locate other pool participants and other of the assets of the Defendants and Relief Defendants, and clarify the source of various funds.

9.      Weighing the equities and considering Plaintiff's likelihood of success in its claims for relief, the issuance of a statutory restraining order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions apply:

10.     The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure ("FRCP") 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

11.     "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, direct or indirect control, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general

3

intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including off-exchange foreign currency ("forex"), futures, swaps or options contracts), insurance policies, and all cash, wherever located.

12. "Defendants" shall mean and refer to not only RFF GP, LLC, KGW Capital Management, LLC, and Kevin G. White, but also to any d/b/a, successor, affiliate, subsidiary, or other entity owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants.

13. "Relief Defendants" shall mean and refer to not only Revelation Forex Fund, LP, Meridian Propane LP, and KGW Real Estate, but also to any d/b/a, successor, affiliate, subsidiary, or other entity owned, controlled, managed, or held by, on behalf of, or for the benefit of Relief Defendants.

## RELIEF GRANTED

### I. Order Against Transfer, Dissipation, and Disposal of Assets

**IT IS HEREBY ORDERED** that:

14. Defendants and Relief Defendants, their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successor thereof, and persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from directly or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any of the Defendants' and Relief Defendants' Assets, wherever located, including the Defendants' and Relief Defendants' Assets held outside the United States, except as provided in Section II of this Order, or as otherwise ordered by the Court. The Defendants' and Relief Defendants' Assets

affected by this paragraph shall include both existing Assets and Assets acquired after the effective date of this Order.

15.     Defendants and Relief Defendants are restrained and enjoined from directly or indirectly opening or causing to be opened any safe deposit boxes titled in the name of or subject to access by them.

## II.     Accounting and Transfer of Funds and Documents

**IT IS FURTHER ORDERED** that within five (5) business days following the service of this Order, Defendants and Relief Defendants shall:

16.     Provide the Commission and the Temporary Receiver with a full detailed accounting of all funds, documents, and assets, including the Assets, inside and outside of the United States that are held by Defendants and Relief Defendants for their benefit, or under their direct or indirect control, whether jointly or singly;

17.     Transfer to the territory of the United States, to the possession, custody, and control of the Temporary Receiver, all funds, documents, and assets, including the Assets (other than real property), located outside the United States that are held by Defendants and Relief Defendants for their benefit, or under their direct or indirect control, whether jointly or singly; and

18.     Provide the Commission and Temporary Receiver immediate access to all records of Defendants and Relief Defendants held by financial institutions located within or outside the territorial United States by signing the *Consent to Release of Financial Records* attached to this Order.

## III.     Directives to Financial Institutions and Others

**IT IS FURTHER ORDERED** that, pending further Order of this Court, that any financial or brokerage institution, business entity, or person that holds or has held, controls or has

controlled, maintains or has maintained, custody of any of the Defendants' and Relief

Defendants' Assets at any time on or after September 1, 2011, shall:

19. **Immediately upon receipt of a copy of this Order** prohibit Defendants and

Relief Defendants and all other persons from withdrawing, removing, assigning, transferring,

pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of the

Defendants' and Relief Defendants' Assets, except as directed by further Order of the Court;

20. **Immediately upon receipt of a copy of this Order** deny Defendants and Relief

Defendants and all other persons, other than the Court-appointed Temporary Receiver, access to

any safe deposit box that is: (a) owned, controlled, managed, or held by, on behalf of, or for the

benefit of Defendants and Relief Defendants, either individually or jointly, whether in the name,

alias, or fictitious "doing business as" name; or (b) otherwise subject to access by Defendants

and Relief Defendants;

21. Provide counsel for the Commission and Temporary Receiver, within five (5)

business days of receiving a copy of this Order, a statement setting forth: (a) the identification

number of each and every account or other asset owned, controlled, managed, or held by, on

behalf of, or for the benefit of Defendants and Relief Defendants (as defined above), either

individually or jointly; (b) the balance of each such account, or a description of the nature and

value of such asset as of the close of business on the day on which this Order is served, and, if

the account or other asset has been closed or removed, the date closed or removed, the total

funds removed in order to close the account, and the name of the person or entity to whom such

account or other asset was remitted; and (c) the identification of any safe deposit box that is

owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants and Relief

Defendants, either individually or jointly, or is otherwise subject to access by Defendants and Relief Defendants; and

22.     Upon request by the Commission and/or the Temporary Receiver promptly provide the Commission and/or the Temporary Receiver with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, Internal Revenue Service Forms 1099, and safe deposit box logs.

### IV.     Maintenance of Business Records

**IT IS FURTHER ORDERED** that:

23.     Defendants and Relief Defendants, their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with Defendants and Relief Defendants, including any successor thereof, and all other persons or entities who receive notice of this Order by personal service or otherwise, are immediately restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing or disposing of, in any manner, directly or indirectly, any documents that relate to the business practices, or business or personal finances of Defendants and Relief Defendants and their subsidiaries and affiliates.

### V.     Inspection and Copying of Books and Records

**IT IS FURTHER ORDERED** that:

24.     Representatives of the Commission and the Temporary Receiver shall immediately be allowed to inspect the books, records, and other documents of Defendants and Relief Defendants and their agents, including, but not limited to, electronically stored information, tape recordings, and computer discs, wherever they may be situated and whether they are in the person of Defendants and Relief Defendants, or others, and to copy said

7

documents, information and records, either on or off the Defendants' and Relief Defendants' premises;

25.    Defendants and Relief Defendants, and their subsidiaries, affiliates, and their officers, agents, servants, employees and attorneys, shall, within 24 hours of the service of this Order, cause to be prepared and delivered to the Commission and the Temporary Receiver, a detailed and complete schedule of all desk top computers, laptop computers and/or any other electronic storage devices or mobile devices, including, without limitation, smart phones and personal digital assistants (collectively, "Computing Devices") owned and/or used by them in connection with Defendants' and Relief Defendants' businesses. The schedules required by this section shall include at a minimum the make, model and description of each Computing Device, along with its location, the name of the person primarily assigned to use the Computing Device, and all passwords necessary to access and use the software contained on the Computing Device. The Commission and the Temporary Receiver shall be authorized to make an electronic, digital or hard copy of all of the data contained on the Computing Devices;

26.    Defendants and Relief Defendants, their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successor thereof, who receive actual notice of this Order by personal service or otherwise, including facsimile transmission, shall cooperate fully with the Commission and the Temporary Receiver to locate and provide to representatives of the Commission and the Temporary Receiver all books and records of Defendants and Relief Defendants, wherever such books and records may be situated, and to locate and provide to representatives of the Commission information regarding the whereabouts of Defendants and Relief Defendants;

8

27.     All persons, including but not limited to the Defendants and Relief Defendants, their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successor thereof, and any persons who receive actual notice of this Order by personal service or otherwise, are enjoined from in any way interfering with or in any way disturbing the Defendants' and Relief Defendants' Assets and from filing or prosecuting any actions or proceedings which involve or which affect the Defendants' and Relief Defendant's Assets, specifically including any proceeding initiated pursuant to the United States Bankruptcy Code or pursuant to Texas statutes, except with the prior permission of this Court.

28.     Defendants and Relief Defendants, their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successor thereof, and any persons who receive actual notice of this Order by personal service or otherwise, shall cooperate in every way with the Commission and the Temporary Receiver and others working with them and provide such information related to the Defendants' and Relief Defendants' Assets as the Commission and Temporary Receiver reasonably request.

## VI.     Appointment of a Temporary Receiver

**IT IS FURTHER ORDERED** that:

29. Kelly M. Crawford is appointed Temporary Receiver for the Defendants' and Relief Defendants' Assets and the assets of any affiliates or subsidiaries of any Defendants and Relief Defendants, with the full powers of an equity receiver. The Temporary Receiver shall be the agent of this Court in acting as Temporary Receiver under this Order;

A.      **Powers of the Temporary Receiver**

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

a.   Assume full control of the corporate Defendants and any business entities owned by any Defendant, by removing any officer, director, independent contractor, employee or agent of a corporate Defendant, from control and management of the affairs of the corporate Defendant and any business entities owned by any Defendant;

b.   Exercise all the lawful powers of the corporate Defendants and their officers, directors, employees, representatives or persons who exercise similar powers and perform similar duties;

c.   Take exclusive custody, control and possession of all funds, property, and other assets in the possession of, or under the control of Defendants and Relief Defendants, wherever situated. The Temporary Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information and digital data and other papers and documents.

d.   Enter and take all necessary steps to secure the residential and business premises of Defendants and Relief Defendants;

e.   Preserve, hold and manage all receivership assets, and perform all acts necessary to preserve the value of those assets, in order to prevent any loss, damage or injury to pool participants, customers, or clients;

f.   Prevent the withdrawal or misapplication of funds entrusted to Defendants and Relief Defendants, and otherwise protect the interests of pool participants, customers, or clients;

g.   Collect all money owed to Defendants and Relief Defendants;

h.   Receive and open the mail or other deliveries addressed to Defendants and Relief Defendants;

i.   Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign jurisdictions necessary to preserve or increase the assets of Defendants or Relief Defendants necessary to carry out the duties pursuant to this Order;

j.   Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities upon obtaining leave of this Court and thereafter, only upon further order of this Court;

k.   Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

l.   Open one or more bank or securities accounts as designated depositories for funds of Defendants and Relief Defendants. The Temporary Receiver shall deposit all funds of Defendants and Relief Defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Temporary Receiver is authorized to invest receivership funds in

U.S. Treasury securities, money market funds or other interest-bearing accounts as appropriate in the Temporary Receiver's judgment;

m.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by Defendants or Relief Defendants prior to the date of entry of this Order, except for payments that the Temporary Receiver deems necessary or advisable to secure assets; and

n.      Close out all forex positions or other outstanding positions and/or hold such assets without further Court order.

**B.      Delivery to Temporary Receiver**

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon them, Defendants and Relief Defendants and any other person or entity served with a copy of this order shall, immediately or within such time as permitted by the Temporary Receiver in writing, deliver over to the Temporary Receiver:

a.      Possession and custody of all funds, property, and all other Assets, owned beneficially or otherwise, wherever located, by Defendants and Relief Defendants;

b.      Possession and custody of documents of Defendants and Relief Defendants, including, but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents, and other papers;

12

c.   All keys, computer passwords, entry codes, PIN numbers and combinations to locks necessary to gain or to secure access to any of the Defendants' and Relief Defendants' Assets or documents of Defendants and Relief Defendants, including but not limited to, access to business premises, means of communication, accounts, computer systems, or other property; and

d.   Information identifying the accounts, employees, properties or other assets or obligations of Defendants or Relief Defendants.

**C.   Cooperation with the Temporary Receiver**

**IT IS FURTHER ORDERED** that Defendants and Relief Defendants, their agents and representatives, and all other persons or entities served with a copy of this Order shall cooperate fully with and assist the Temporary Receiver in the performance of his duties. This cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this Order; providing all keys, entry codes, PIN numbers, and combinations to locks necessary to gain or secure access to any of the Assets or documents of Defendants or Relief Defendants, and any password required to access any computer or electronic files in any medium of Defendants or Relief Defendants; advising all persons who owe money to Defendants or Relief Defendants that all debts should be paid directly to the Temporary Receiver; and signing any documents reasonably required by the Temporary Receiver to recover Assets.

**D.   Stay**

**IT IS FURTHER ORDERED** that except by leave of the Court, during the pendency of the receivership ordered herein, Defendants and Relief Defendants and all other persons and

entities seeking relief of any kind from Defendants' and Relief Defendants' Assets (other than

the present action by the Commission), including, but not limited to, pool participants,

customers, clients, investors, members, partners, trust beneficiaries, note holders, creditors,

claimants, lessors, in law or equity, and all persons acting on behalf of any such pool participant,

customer, client, investor, member, partner, trust beneficiary, note holder, creditor, claimant,

lessor, or other person, including sheriffs, marshals, and all officers and deputies, and their

respective attorneys, servants, agents and employees, are, until further order of this Court, hereby

restrained, enjoined and stayed from doing anything, directly or indirectly, to interfere with the

Temporary Receiver's performance of his duties and the administration of Defendants' and

Relief Defendants' Assets.  Accordingly, all such persons are enjoined and stayed from taking

any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in

the name of, the Defendants, the Relief Defendants, the Temporary Receiver, the receivership

assets or the Temporary Receiver's duly authorized agents acting in their capacities as such,

including but not limited to, the following actions:

    a.    Commencing, prosecuting, litigating or enforcing any civil suit, except that actions may be filed to toll any applicable statute of limitations;

    b.    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of Defendants or Relief Defendants or any property claimed by Defendants or Relief Defendants, or attempting to foreclose, forfeit, alter or terminate any of the Defendants' or Relief Defendants' interests in property, whether such acts are part of a judicial proceeding or otherwise;

14

c.    Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, right of offset, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of Defendants, Relief Defendants, or the Temporary Receiver or any agent of the Temporary Receiver; and

d.    Doing any act or thing to interfere with the Temporary Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Temporary Receiver or the duties of the Temporary Receiver, or to interfere with the exclusive jurisdiction of this Court over the property and assets of Defendants or Relief Defendants.

This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental or regulatory unit, such as the National Futures Association, to enforce such governmental or regulatory unit's police or regulatory power.

**E.**    **Temporary Receiver's Report to the Court and Compensation**

**IT IS FURTHER ORDERED** that the Temporary Receiver maintain written accounts, itemizing receipts and expenditures, describing properties held or managed, and naming the depositories of receivership funds; make such written accounts and supporting documentation available to the Commission for inspection, and, within sixty (60) days of being appointed and periodically thereafter, as directed by the Court, file with the Court and serve on the parties a report summarizing efforts to marshal and collect assets, administer the receivership estate, and otherwise perform the duties mandated by this Order.

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them for those services authorized by this Order that when rendered were (1) reasonably likely to benefit the receivership estate or (2) necessary to the administration of the estate. The Temporary Receiver and all personnel hired by the Temporary Receiver shall be compensated solely out of funds now held by or in the possession or control of or which may in the future be received by Defendants or Relief Defendants, or from proceeds of the sale of Defendants' or Relief Defendants' Assets, and shall not be entitled to any compensation from the Commission. The compensation of the Temporary Receiver and his professionals shall be entitled to priority as administrative expenses. The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than ninety (90) days after the date of this Order and subsequent requests filed quarterly thereafter. The requests for compensation shall itemize the time and nature of services rendered by the Temporary Receiver and all personnel hired by the Temporary Receiver. The Temporary Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

F.     **No Bond**

**IT IS FURTHER ORDERED** that the Temporary Receiver is appointed without bond.

### VII.     Order Granting Expedited Discovery

**IT IS FURTHER ORDERED** that:

16

30.    The Commission and the Temporary Receiver may conduct expedited discovery, removing the prohibition upon discovery before the early meeting of counsel pursuant to FRCP 26(f), in accordance with FRCP 26(d).  The Commission and the Temporary Receiver may take depositions of Defendants and Relief Defendants and non-parties subject to two calendar days notice pursuant to FRCP 30(a) and FRCP 45, that notice may be given personally, by facsimile, or by electronic mail, and more than ten depositions may be taken.

31.    The Commission and the Temporary Receiver may conduct expedited discovery to enable the Commission to fulfill its statutory duties and protect investors from further loss or damage.  This expedited discovery will allow the Commission and the Temporary Receiver to determine the full extent of Defendants' alleged wrongdoing (including, but not limited to, the possible involvement of others), locate Defendants' other customers, identify customers' funds and other of the Defendants' and Relief Defendants' Assets, and clarify the sources of various funds.

### VIII.   Bond Not Required of Plaintiff

**IT IS FURTHER ORDERED** that:

32.    Plaintiff is an agency of the United States of America and, accordingly, need not post a bond.

### IX.    Service

**IT IS FURTHER ORDERED** that:

33.    Copies of this Order may be served by any means, including facsimile transmission, upon any entity or person that may have possession, custody, or control of any documents or the Defendants' and Relief Defendants' Assets that may be subject to any provision of this Order, and, additionally, that Harry E. Wedewer, John Einstman, Dmitriy Vilenskiy, Jeremy Christianson, or representatives thereof, and representative(s) of the U.S.

17

Marshals Service are specially appointed by the Court to effect service. Further, service of the Summons, Complaint, or other process may be effected by any Commission representative, any U.S. Marshal or deputy U.S. Marshal, or in accordance with FRCP 4. Further, law enforcement officers, including but not limited to U.S. Marshals, are authorized to assist Commission representatives in effecting service of this Order, Summons and Complaint upon Defendants and Relief Defendants and carrying out the seizure of documents as set out in this Order in accordance with FRCP 4.

## X.    Service on the Commission

**IT IS FURTHER ORDERED** that:

34.    Defendants and Relief Defendants shall serve all pleadings, correspondence, notices required by this Order, and other materials on the Commission by delivering a copy to Harry E. Wedewer, Trial Attorney, Division of Enforcement, U.S. Commodity Futures Trading Commission, 1155 21st Street, N.W., Washington, D.C. 20581 and/or by filing such pleadings or other materials electronically with the Court.

## XI.    Force and Effect

**IT IS FURTHER ORDERED** that:

35.    This Order shall remain in full force and effect until further order of this Court and this Court retains jurisdiction of this matter for all purposes.

## XII.    Order to Show Cause

**IT IS FURTHER ORDERED** that:

36.    Defendants shall appear before United States Magistrate Judge Don D. Bush on the 18th day of July, 2013, at 2:00 p.m., at the United States Courthouse for the Eastern District of Texas, 7940 Preston Road, Plano, Texas 75024, to show cause, if there be any, why an Order for Preliminary Injunction should not be granted to prohibit further violations of the Act and why the other relief

requested should not be granted pending trial on the merits of this action.

37.   Should any party wish to file a memorandum of law or other papers in opposition

to the SRO Motion, all papers shall be filed with the court by ECF on or before 12:00 p.m. on July 15, 2013

and served via facsimile or overnight delivery to the Commission's Washington, D.C. office no later

than 12:00 p.m. on July 15, 2013.  The court will not accept a reply.

**SIGNED this the 9th day of July, 2013.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

19

## CONSENT TO RELEASE OF FINANCIAL RECORDS

I, _____, a resident of _____, do hereby direct any

bank, trust, or other financial company, as well as any of its officers, employees, and agents, at

which I have or had a bank account or other financial account of any kind operated under my

name or any other name (including any corporation or other entity) for which I am or was

authorized to draw on the account, to disclose all information and deliver copies of all documents

of every nature in the bank's, trust's, or other financial company's possession or control which

relate to said bank or other financial accounts to any attorney or investigator of the

U.S. Commodity Futures Trading Commission and to give evidence relevant thereto, in the

matter of *U.S. Commodity Futures Trading Commission v. RFF GP, LLC, et al.*, Case No.

_____, now pending before the United States District Court

for the Eastern District of Texas, and this shall be irrevocable authority for so doing.  This

direction is intended to apply to not only the laws of the United States, but also to the law of

countries other than the United States which restrict or prohibit the disclosure of bank

information without the consent of the holder of the account, and shall be construed as consent

with respect thereto, and the same shall apply to any of the bank accounts or other financial

accounts for which I may be a relevant principal.


Dated:_____          _____
                                Signature



20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RFF GP, LLC, KGW CAPITAL MANAGEMENT, LLC, and KEVIN G. WHITE,<br><br>Defendants,<br><br>REVELATION FOREX FUND, LP, MERIDIAN PROPANE LP, and W CORPORATE REAL ESTATE, LP d/b/a KGW REAL ESTATE,<br><br>Relief Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 4:13-CV-382<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER LIFTING TEMPORARY SEAL

Plaintiff, U.S. Commodity Futures Trading Commission, moved this Court for an order lifting the temporary seal of the entire docket and case file in this matter on the basis that the seal was no longer necessary because Defendants, RFF GP, LLC, KGW Capital Management, LLC, and Kevin G. White, and Relief Defendants, Revelation Forex Fund, LP, Meridian Propane LP, and W Corporate Real Estate, LP d/b/a KGW Real Estate, have now been personally served with process in this matter.

WHEREFORE, for good cause shown and the case now having been referred to the undersigned for all pretrial matters, the motion (Dkt. 14) is GRANTED and IT IS ORDERED THAT THIS MATTER IS AND BE UNSEALED.

SO ORDERED.

**SIGNED this 11th day of July, 2013.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

